IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:17-CV-03158 |
| PDS DRILLING LLC, PEARL RESOURCES LLC and PEARL RESOURCES OPERATING CO. LLC | § § § § § § | |
| Defendants. | § | |

### DEFENDANTS PEARL RESOURCES LLC AND PEARL RESOURCES OPERATING CO. LLC'S ORIGINAL ANSWER AND COUNTERCLAIM

TO THE HONORABLE COURT:

Defendants Pearl Resources LLC ("Pearl Resources") and Pearl Resources Operating Co. LLC ("Pearl Operating") (collectively "Pearl") file their Original Answer and Counterclaims to the First Amended Complaint for Declaratory Judgment ("Amended Complaint") filed by Evanston Insurance Company ("Evanston"), and alleges and states as follows:

### ORIGINAL ANSWER

1. Pearl admits that Evanston has brought this action seeking a declaratory judgment. Pearl denies the balance of Evanston's allegations in Paragraph 1 of the Amended Complaint. In its discussions of the policies, Evanston fails to mention that the Evanston policies provides an endorsement for Sudden and Accidental Pollution coverage (the "Pollution Coverage") to its insured, PDS Drilling LLC ("PDS") and to Pearl as additional insureds. The Pollution Coverage expressly negates several of the exclusions relied on by Evanston. Evanston also fails to mention the endorsement for Underground Resources and Equipment Coverage

("UREC") which negates several of the exclusions relied on by Evanston.

2. Pearl is without sufficient knowledge to admit or deny the allegations contained in paragraph 2 of the Amended Complaint.

3. Pearl is without sufficient knowledge to admit or deny the allegations contained in paragraph 3 of the Amended Complaint.

4. Pearl Resources admits the allegations contained in paragraph 4 the Amended Complaint, except that its principal place of business is located at 118 Paul Revere Dr., Houston, Texas 77024.

5. Pearl Operating admits the allegations contained in paragraph 5 of the Amended Complaint.

6. Pearl admits the allegations contained in paragraph 6 of the Amended Complaint.

7. Pearl admits the allegations contained in paragraph 7 of the Amended Complaint.

8. Pearl admits the allegations contained in paragraph 8 of the Amended Complaint.

9. Pearl admits the allegations contained in paragraph 9 of the Amended Complaint

10. Pearl admits that Pearl Resources and Pearl Operating entered into a Master Service Agreement with PDS. Pearl denies the remaining allegations in paragraph 10 of the Amended Complaint.

11. Pearl denies the allegations contained in paragraph 11 of the Amended Complaint. The Turnkey Drilling Contract was between PDS and Pearl Operating.

12. Pearl admits that PDS entered into an IADC Daywork Drilling Contract with Bison Drilling and Field Services, LLC ("Bison"). Pearl denies the remaining allegations contained in paragraph 12 of the Amended Complaint.

13. Pearl admits the allegations contained in the first sentence of paragraph 13 but

denies the remaining allegations contained in paragraph 13 of the Amended Complaint.

14. Pearl denies the allegations contained in paragraph 14 of the Amended Complaint.

15. Pearl admits that the Railroad Commission's representative inspected the Site on October 26, 2016, but denies the remaining allegations contained in paragraph 15 of the Amended Complaint.

16. Pearl admits the allegations contained in paragraph 16 of the Amended Complaint.

17. Pearl admits that several contractors have filed suits against PDS, Pearl Resources and/or Pearl Operating. Pearl disagrees with Evanston's characterization of several of these suits as "breach of contract" cases. Under the Pollution Coverage provided to PDS by Evanston, the charges for pollution containment and remediation are the responsibility of Evanston. Evanston has settled with one the contractors and has engaged in ongoing environmental remediation work with the Railroad Commission but has failed to honor other claims which led to the filing of these various "breach of contract lawsuits" against some or all of the Defendants. Pearl denies the remaining allegations contained in paragraph 17 of the Amended Complaint.

18. Pearl admits that Pearl seeks the damages that Pearl is entitled to under the Evanston policies. Although PDS has not appeared in this lawsuit, Pearl expects that PDS also seeks to recover the damages it is entitled to under the Evanston policies. Pearl denies the balance of the allegations contained in paragraph 18 of the Amended Complaint.

19. Pearl admits that Pearl has filed a lawsuit against PDS but are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 19 of the Amended Complaint.

20. Pearl admits the allegations contained in the first sentence of paragraph 20 of the

Amended Complaint but denies the remaining allegations contained in paragraph 20 which omits any mention of the coverages provided to Pearl as well as omitting any mention of the Pollution Coverage.

21. Pearl denies the allegations contained in paragraph 21 of the Amended Complaint and notes that the Policy specifically provides Sudden and Accidental Pollution coverage as well as Underground Resources and Equipment Coverage.

22. Pearl admits the allegations contained in paragraph 22 of the Amended Complaint.

23. It is not necessary to respond to paragraph 23 of the Amended Complaint for the reason that no factual allegations are contained in that paragraph.

24. Pearl admits that the Policy includes a breach of contract exclusion but denies that the exclusion applies or that it precludes the coverage provided to Defendants. Pearl denies the remaining allegations contained in paragraph 24 of the Amended Complaint.

25. Pearl denies the allegations contained in paragraph 25 of the Amended Complaint.

26. Pearl denies the allegations contained in paragraph 26 of the Amended Complaint.

27. It is not necessary to respond to paragraph 27 of the Amended Complaint for the reason that no factual allegations are contained in that paragraph.

28. Pearl denies the allegations contained in paragraph 28 of the Amended Complaint.

29. Pearl denies the allegations contained in paragraph 29 of the Amended Complaint.

30. Pearl denies the allegations contained in paragraph 30 of the Amended Complaint.

31. It is not necessary to respond to paragraph 31 of the Amended Complaint for the reason that no factual allegations are contained in that paragraph.

32. Pearl denies the allegations contained in paragraph 32 of the Amended Complaint.

33. Pearl denies the allegations contained in paragraph 33 of the Amended Complaint.

34. Pearl denies the allegations contained in paragraph 34 of the Amended Complaint.

35. It is not necessary to respond to paragraph 35 of the Amended Complaint for the reason that no factual allegations are contained in that paragraph.

36. Pearl denies the allegations contained in paragraph 36 of the Amended Complaint.

37. Pearl denies the allegations contained in paragraph 37 of the Amended Complaint.

38. Pearl denies the allegations contained in paragraph 38 of the Amended Complaint.

39. It is not necessary to respond to paragraph 39 of the Amended Complaint for the reason that no factual allegations are contained in that paragraph.

40. Pearl denies the allegations contained in paragraph 40 of the Amended Complaint.

41. Pearl denies the allegations contained in paragraph 41 of the Amended Complaint.

42. Pearl denies the allegations contained in paragraph 42 of the Amended Complaint.

43. It is not necessary to respond to paragraph 43 of the Amended Complaint for the reason that no factual allegations are contained in that paragraph.

44. Pearl denies the allegations contained in paragraph 44 of the Amended Complaint.

45. Pearl denies the allegations contained in paragraph 45 of the Amended Complaint.

46. Pearl denies the allegations contained in paragraph 46 of the Amended Complaint.

47. It is not necessary to respond to paragraph 47 of the Amended Complaint for the reason that no factual allegations are contained in that paragraph.

48. Pearl admits the allegations contained in paragraph 48 of the Amended Complaint.

49. Pearl denies the allegations contained in paragraph 49 of the Amended Complaint.

50. Pearl denies the allegations contained in paragraph 50 of the Amended Complaint.

51. It is not necessary to respond to paragraph 51 of the Amended Complaint for the reason that no factual allegations are contained in that paragraph.

52. Pearl denies the allegations contained in paragraph 52 of the Amended Complaint.

53. Pearl denies the allegations contained in paragraph 53 of the Amended Complaint.

54. Pearl denies the allegations contained in paragraph 54 of the Amended Complaint.

55. Pearl requests a trial by jury. The fee has been or will be paid.

## AFFIRMATIVE DEFENSES

56. The policies issued by Evanston (both primary and excess) provide coverage for the claims asserted by Pearl Resources LLC and Pearl Operating. In the alternative, the policies at issue are ambiguous and should be construed against Evanston and in favor of Pearl Resources and Pearl Operating.

## ORIGINAL COUNTERCLAIM

57. Pursuant to Federal Rule of Civil Procedure 13, Pearl Resources LLC ("Pearl Resources") and Pearl Resources Operating Co. LLC ("Pearl Operating") assert this Original Counterclaim against Evanston. In support thereof, Pearl Resources and Pearl Operating respectfully shows the following:

58. Pearl Resources is a Texas limited liability company with its principal place of business in Harris County, Texas.

59. Pearl Operating is a Texas limited liability company with its principal place of business in Harris County, Texas.

60. Counter-Defendant Evanston Insurance Company ("Evanston") is an insurance company organized and existing under the laws of the State of Illinois, with its principal place of business located in Deerfield, Illinois. Evanston may be served through its attorney of record,

Robbie A. Moehlmann at 1001 McKinney Street, Suite 2000, Houston, Texas 77002.

61. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(1) based on complete diversity of citizenship.

62. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2).

56. 63. This is an insurance coverage dispute. Pearl Resources and Pearl Operating are additional insureds on two policies obtained by PDS Drilling LLC ("PDS Drilling") from Evanston. Evanston Policy BEL01695 is the primary policy providing coverage for General Commercial Liability Insurance with a policy period of October 19, 2016 to October 19, 2017 (the "Primary Policy"). The Primary Policy contains an Endorsement entitled "Sudden, Accidental and Abrupt Pollution Coverage—Oil and Gas Industry." The Aggregate Primary Policy Limit is $2 million. Evanston also issued Policy BEX00220 (the "Excess Policy") to PDS and Pearl Resources and Pearl Operating are additional insureds under the Excess Policy. The Excess Policy Limit is $5 million and it covers the same policy period. The Pollution Coverage expressly negates several of the exclusions relied on by Evanston. Evanston also fails to mention the endorsement for Underground Resources and Equipment Coverage ("UREC") which negates several of the exclusions relied on by Evanston.

64. Pearl Resources is the lessee of an oil and gas lease known as the Garnet State Lease in Pecos County, Texas (the "Lease"). Pearl Resources retained Pearl Operating to serve as the operator of wells be drilled and completed on the Lease. On August 1, 2016 Pearl Resources and Pearl Operating entered into a Master Service Agreement (the "MSA") with PDS Drilling which was to govern any work performed by PDS for Pearl Resources and/or Pearl Operating. The MSA obligated PDS to obtain additional insured coverage for Pearl Resources and Pearl Operating.

7

65. On September 13, 2016, Pearl Operating entered into a Turnkey Drilling Contract with PDS to drill and complete a Well known as the Garnet State #4 Well (the "Garnet #4") on the Lease.

67. On October 7, 2016, PDS entered into an IADC Daywork Drilling Contract (the "Subcontract") with Bison Drilling and Field Services, LLC ("Bison"). On October 24, 2016 drilling operations began at the Site. When Bison's drilling crew drilled to a depth of 3,100 feet a formation known as the Capitan Reef was reached and pressurized water began to flow out of the wellhead (the "Incident"). For approximately three weeks pressurized water continued to flow from the Site despite the efforts of PDS, Bison and its subcontractors. The Well was contained on November 14, 2016.

68. Per the Turnkey Drilling Contract, PDS Drilling agreed that it would furnish equipment, labor, and perform services to drill the Garnet State #4 Well to reach the depth of 11,000 feet subsurface (+/- 200 feet) and to deliver a Successful Well as that term was defined in Exhibit "A" of the Contract.

69. Per the Turnkey Drilling Contract, PDS Drilling was required to maintain well control equipment in good condition at all times and to use all reasonable means to prevent and control fires and blowouts and to protect the hole. On October 25, 2016, the wellbore of the Garnet State #4 Well had been drilled to a depth of about 4,800' when a wild well event occurred. The wild well occurred as a result of the failures of PDS Drilling and its subcontractors to maintain well control equipment in good condition, and failure to use all reasonable means to prevent and control such a blowout. The wild well incident caused extensive damage to the partially completed wellbore of the Garnet State #4 Well, the underground formations, and the surface of the Lease.

70. Per the Turnkey Drilling Contract, PDS Drilling, LLC agreed to assume responsibility for all claims and demands arising directly or indirectly from a wild well incident, including all other pollution or contamination that may result from a blowout or from uncontrolled flow of water – such as occurred in the wild well incident at the Garnet State #4 Well.

71. In January 2017, it was determined that the partial wellbore of the Garnet State #4 Well had been so extensively damaged in the wild well incident that it could not be utilized for further drilling, or for production. Sometime in January 2017, PDS Drilling notified Pearl Resources that it lacked funds to continue any attempts to either repair the partial wellbore of the Garnet State #4 Well, or to drill a replacement well, and that PDS Drilling was abandoning the Garnet State #4 Well. In February, 2017, the Garnet State #4 Well was finally plugged and abandoned. Even in the absence of any alleged failure to perform its contract with Pearl, the acts and omissions of PDS and its contractors and subcontractors were negligent and did result in property damage for which PDS would have been otherwise liable and therefore such property damage would be covered under the Evanston policies.

72. After the Incident, PDS engaged a number of third parties to perform services and provide goods designed to stop the flow of pollutants from the Well; to contain pollutants from further damaging the property surrounding the Well Site; and to mitigate damages from the Incident. PDS, Pearl Resources and Pearl Operating promptly provided notice to Evanston of the Incident and demanded that Evanston provide the coverage provided by the two insurance policies. For the most part, Evanston has failed to comply with its duties as an insurer with respect to PDS, Pearl Resources and Pearl Operating. As a result, numerous lawsuits have been filed by entities who performed work relating to the Incident. Pearl has incurred substantial

attorney's fees and expenses in defending against vendors who should have been paid by Evanston prior to the lawsuits being filed. Out of the many lawsuits which have been filed, Evanston has settled the claims with only one vendor.

73. The Evanston policies provide coverage for the damages sought in this lawsuit. First, Evanston is obligated to pay the costs incurred for pollution coverage work. Evanston's failure to pay those expenses has exposed all of the Defendants to legal fees and the costs of defending claims that should have been paid by Evanston to begin with. In addition, several vendors have filed liens against the interests of Pearl in the Lease. Second, Evanston is obligated to pay those sums that the insured becomes legally obligated to pay as damages because of property damage. The property damage is covered by the Evanston policies because the property damage resulted from an occurrence that took place in the coverage territory; the property damage occurred during the policy period; and prior to the policy period, none of the insured had notice of any claim or occurrence. The sums Evanston is obligated to pay are in excess of the limits of the Primary Policy.

## CAUSES OF ACTION

### Count 1 ---- Declaratory Relief

74. Pearl repeats and re-alleges the allegations in the paragraphs above as fully set forth herein. This is a claim for declaratory judgement pursuant to 28 U.S.C. §2201, *et seq*., and Federal Rule of Civil Procedure 57 for the purpose of determining a controversy between the parties concerning the rights and obligations under the Evanston policies at issue.

75. Pearl seeks a declaration that Evanston is required to pay all of the sums that any of the insureds becomes legally obligated to pay for property damages under the Primary Policy and Excess Policy.

76. Pearl seeks a declaration that Evanston is not entitled to the declaration it seeks in its Complaint.

### Count 2 ---- Breach of Contract

77. Pearl repeats and re-alleges the allegations in the paragraphs above as if fully set forth herein.

78. Evanston has failed to fulfill its contractual obligations to pay the sums PDS became legally obligated to pay and as a result Pearl was subjected to numerous lawsuits and Evanston has failed to pay the sums necessary for the containment and remediation of property damages caused by the Incident. Evanston has committed a material breach of contract. Evanston's breach has proximately caused damages to Pearl.

79. As a result of Evanston's breach of contract, Pearl is entitled to recover its damages.

80. All conditions precedent to this suit have been met, or they have been waived.

81. Pursuant to Section 38.001(8) of the Texas Civil Practice and Remedies Code, Pearl is also entitled to recover a reasonable amount for attorneys' fees to prosecute the action.

### Count 3 ---- Violations of Chapter 542 of the Texas Insurance Code Processing Settlement of Claims

82. Pearl repeats and re-alleges the allegations in the paragraphs as if fully set forth herein.

83. In its dealings with Pearl, Evanston has failed to comply with the deadlines imposed by Chapter 542 of the Texas Insurance Code for acknowledging, accepting or rejecting, and paying a claim.

84. As a result of Evanston's violations of the Texas Insurance Code, Pearl is entitled to interest on the amount of its claims at the rate of 18 percent a year together with reasonable attorneys' fees.

85. Pearl requests trial by jury.

## PRAYER

WHEREFORE, Pearl Resources LLC and Pearl Resources Operating Co. LLC pray that the Court enter judgement:

(a) Dismissing Evanston's claim with prejudice;

(b) Declaring that the claim made by Pearl is covered by the policies at issue and that Evanston has a duty to defend Pearl in the Underlying Lawsuits;

(c) Awarding Pearl actual damages sustained as a result of Evanston's breach of contract;

(d) Awarding Pearl statutory damages;

(e) Awarding reasonable and necessary attorneys' fees, costs, and interest; and

(f) Granting all other relief as the Court may deem proper and just.

Respectfully submitted,

By: _____/s/ James A. Dunn_____
James A. Dunn
Texas Bar No. 06244800
jdunn@dunn-neal.com
S. Loyd Neal, III
Texas Bar No. 14839390
lneal@dunn-neal.com
11767 Katy Freeway, Suite 950
Houston, Texas 77079
Tel. (713) 403-7405
Fax (713) 230-8940
Attorney-in-Charge for Defendants/Counter-Plaintiffs Pearl Resources LLC and
Pearl Resources Operating Co. LLC

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that service on Plaintiff's attorney of record will be automatically accomplished through the Notice of Electronic Filing on this 13th day of August, 2018, as follows:

Robbie A. Moehlmann
Walker Wilcox Matousek LLP
1001 McKinney Street, Suite 2000
Houston, TX 77002
Email: moehlmann@wwmlawyers.com
Facsimile: (713) 343-6571

           ___/s/ James A. Dunn_____
           James A. Dunn